FILED
RECEIVED
2010 JAN 14 P 2:54
CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

1  Katherine Christensen
   1134 West Grand Caymen Drive
2  Gilbert, Arizona 85233
   Tel: (480) 813-3885
3  Pro Se

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA, PHOENIX DIVISON

| | |
|---|---|
| Katherine Christensen, In Person Plaintiff, | Case #09-21818-RTB |
| Vs. | |
| CAPITAL ONE NA, its assigns and/or successors; CHEVY CHASE BANK; | Adversarial Case No.: 09-01357-RTB |
| STEVEN R. HALPIN d/b/a CFO CHEVY CHASE BANK his assigns and/or | CHAPTER 7 |
| successors; GARY PERLIN d/b/a CFO CAPITAL ONE NA his assigns and/or | MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT |
| successors; SMITH & CRAVEN PLLC; GARY MICHAEL SMITH; D. JEFFREY | TRUSTEE SALE AND REQUEST FOR PERMANENT INJUNCTION |
| CRAVEN; FREDERICK C. THOMAS; CARSON MESSINGER ELLIOTT | |
| LAUGHLIN & RAGAN PLLC; ROBERT | **EMERGENCY APPLICATION** |
| P. LINDFORS; CAL-WESTERN RECONVEYANCE CORPORATION; | |
| SUSAN SMOTHERS; MORTGAGE ELECTRONIC REGISTRATION | |
| SYSTEMS INC.; MARY STRATHAM d/b/a NOTARY d/b/a SIGNATORY FOR | |
| MORTGAGE ELECTRONIC SYSTEMS INC.; MARTY STRATHAM d/b/a | |
| NOTARY d/b/a SIGNATORY FOR CAL-WESTERN RECONVEYANCE | |
| CORP.; MARY STRATHAM d/b/a NOTARY FOR CAL-WESTERN | |
| RECONVEYANCE CORP.; PAMELA CAMPBELL d/b/a ASSISTANT | |
| SECRETARY OF MERS; NORTH AMERICAN TITLE AGENCY OF | |
| ARIZONA c/o NORTH AMERICAN | Assigned to: Hon. Redfield T. Baum |
| TITLE INSURANCE CO.; GILA COUNTY SHERIFF OFFICE, CHRIS | |
| MCBREARTY d/b/a MORTGAGE BROKER for CHARTER FUNDING; | |
| CHARTER FUNDING; FIRST MAGNUS FINANCIAL; INSTITUTE FOR | |
| FINANCIAL LEARNING; MERENDON MINING, JOHN DOES And JANE DOES | |
| 1-100, ABC CORPORATIONS 1-100, and XYZ PARTNERSHIPS 1-100, Defendants, | |

**COMES NOW,** Katherine Christenson known interchangeably as "Plaintiff" or "Movant", who asks the court to grant an EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT TRUSTEE SALE against defendants named and as yet unnamed, defendants' attorneys, officers, agents, servants, employees, and any and all other persons in active concert or participation with them from Selling, Converting, or by any means whatsoever, interfering with Plaintiff's peaceful use, enjoyment and possession of or Dispossessing Plaintiff of her Property, including but not limited to Enjoining the Gila County Sheriff's Office (or any part) from physically ejecting Plaintiff from her property <u>until all facts are presented to the court and its ruling based theron</u>. Plaintiff additionally requests an Evidentiary Hearing and Oral Argument. Plaintiff's property is located at 2074 Munsee Drive, Payson, Arizona. Assessor Parcel Number parcel #302-14-076.

This Motion is supported by the attached Memorandum in support of motion for temporary restraining order is incorporated herein by this reference.

## MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

### THE PARTIES AND VENUE

1. Plaintiff KATHERINE CHRISTENSEN is a single woman, living in the State of Arizona at all times relevant to the Complaint.

2. Plaintiff is a "consumer" as defined by TILA, 15 U.S.C. § 1602(h) and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.2(a)(11).

3. Defendant CHEVY CHASE BANK identifies itself as a debt servicer and alleges the right to service Plaintiff's mortgage and demand mortgage payments from Plaintiff.

4. Defendant CAPITAL ONE NA identifies itself as an entity that purchased Chevy Chase Bank and as an entity with the right to service Plaintiff's mortgage and demand mortgage payments from Plaintiff.

5. On information and belief, Defendant Steven R. Halpin was at all times relevant to the complaint doing business as Chief Financial Officer of Chevy Chase Bank and caused events to occur in the State of Arizona.

6. On information and belief Defendant Gary Perlin was at all times relevant to to the complaint doing business as Chief Financial Officer of Capital One NA and caused events to occur in the State of Arizona.

7. Smith & Craven PLLC was at all times relevant to this complaint the law firm representing Chevy Chase Bank caused events to occur in the State of Arizona.

8. Gary Michael Smith an Arizona Licensed Bar Attorney #016307 attorney for SMITH & CRAVEN PLLC and CHEVY CHASE BANK FSB, and MERS caused events to occur in the State of Arizona.

9. D. JEFFREY CRAVEN an Arizona Licensed Bar Attorney #020799 caused events to occur in the State of Arizona.

10. FREDERICK C. THOMAS an Arizona Licensed Bar Attorney #023844 caused events to occur in the State of Arizona.

11. CARSON MESSINGER ELLIOTT LAUGHLIN & RAGAN PLLC ("CMELR") caused events to occur in the State of Arizona.

12. ROBERT P. LINDFORS an attorney with CMELR caused events to occur in the State of Arizona.

13. CAL-WESTERN RECONVEYANCE CORPORATION is the company improperly attempting to foreclose on plaintiff's property.

14. SUSAN SMOTHERS, upon information and belief is doing business as A.V.P. for CAL-WESTERN RECONVEYANCE and caused events to occur in the State of Arizona.

15. Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC., ("MERS") is a Delaware corporation doing business in California AND Arizona. MERS purports to be in the business of holding title to mortgages.

16. MERS is not a corporation in good standing in either Arizona or California and has been suspended from doing business in Arizona as of April 2009, but appears to recently be doing damage control with a newly appointed contact.

17. Upon information and belief PAMELA CAMPBEULL was doing business as ASSISTANT SECRETARY OF MERS.

18. Upon information and belief MARY STRATHAM was doing business as a NOTARY doing business as a SIGNATORY FOR MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC.

19. Upon information and belief MARY STRATHAM was doing business as a NOTARY doing business as a SIGNATORY FOR
CAL-WESTERN RECONVEYANCE CORPORATION

20. Upon information and belief MARY STRATHAM was doing business as a NOTARY for CAL-WESTERN RECONVEYANCE CORPORATION.

21. Defendant Jason P. Sherman an Arizona State Licensed Bar #019999 caused events to occur in the State of Arizona.

22. Defendant NORTH AMERICAN TITLE AGENCY OF ARIZONA caused events to occur in the State of Arizona.

23. Defendant NORTH AMERICAN TITLE INSURANCE CO. caused events to occur in the State of Arizona.

24. Chris McBrearty for all times relevant to the Complaint was a Mortgage Broker with Charter Funding based in California and caused events to occur in the State of Arizona.

25. Defendant Charter Funding for all times relevant to the Complaint was a subsidiary of First Magnus Financial incorporated in the state of Arizona and caused events to occur in the State of Arizona.

26. Defendant First Magnus Financial is a diversified financial marketing and/or services corporation(s) engaged primarily in residential mortgage banking and/or related businesses. First Magnus Financial is believed to be a residential mortgage lender and servicer and alleges it was the original lender for Plaintiff's residential mortgage. It is in U.S. Bankruptcy in Tucson Arizona Case #4:07-bk-01578 and Case #4-07-bk-01578-JMM.

27. Defendant The Institute of Financial Learning ("IFFL") for all times relevant to the Complaint was incorporated in Calgary Alberta Canada with a subsidiary company incorporated in Las Vegas Nevada. IFFL was the front company through which investors monies were funneled into various National and International gold mines and other investments. It was founded by Milo Brost and Gary Sorenson both of whom are presently incarcerated in Calgary Alberta Canada awaiting trial for, inter alia, financial fraud.

28. Merendon Mining (Nevada) Inc. was the organization that ran the National and International Mining "investments" associated with IFFL. It was founded by Milo Brost and Gary Sorenson. It is presently in U.S. Bankruptcy in Miami Florida Case #09-11958-AJC

29. Defendants set forth above are hereinafter collectively referred to as "Defendants."

30. Plaintiff is ignorant of the true names and capacities of the Defendants John Does and Jane Does 1-100, ABC Corporations 1-100 and XYZ Partnerships 1-100, inclusive, and Plaintiff will amend this Complaint to allege such names and capacities as soon as they are

ascertained. Plaintiff believes and alleges that each of said fictitiously named Defendants are co-conspirators and knowingly particiapted in the wrongful acts complained of herein.

32. Defendants, either individually or collectively, have caused events to occur in Arizona giving rise to this Complaint. At all relevant times herein Defendants were and still are agents for one another, and acting under the course and scope thereof, with knowledge and consent of each other.

32. Venue is proper pursuant to Ariz.Rev.Stat.Ann. § 12-401, et seq.

33. This Court has jurisdiction over the parties as all Defendants engage in business within the State of Arizona and thus have sufficient contacts.

34. This Court has jurisdiction over all matters related to the emergency, injunctive, provisional and equitable relief sought herein, pursuant to the agreements of the parties referenced herein.

35. The parties herein are subject to certain contractual obligations that are the subject of this litigation.

## BASIS OF EMERGENCY FILING

36. Plaintiff has been placed at grave and significant risk of a miscarriage of justice due to the actions of Defendants. All her time, funds and health have been expended in the fight to defend and preserve her property and seek justice. Now at the 11th hour, Plaintiff has only recently come into possession of the evidentiary facts, information and advice that has caused her to file the adversarial complaint. The Adversarial Complaint asks for injunctive relief in order to preserve the status quo and to achieve any meaningful relief. However, until the hearing is held and the court hears evidence, Plaintiff needs protection of this court enjoining Defendants from moving forward with a trustee sale of plaintiff's property.

37. Application is made upon the ground that defendants unless restrained, will unlawfully move to remove Plaintiff from her property. Defendants did not have standing in the past to commence foreclosure action, but they wrongfully, improperly, illegally commenced anyway. Plaintiff believes they will do so again. If defendants are not enjoined, Plaintiff will suffer irreparable harm in that she will lose her property, and not have her day in court to obtain the justice she seeks.

38. Plaintiff requests that her Application for a Temporary Restraining Order to Halt the Eviction from her residence be given Emergency status and considered ex parte.

## INTRODUCTION

39. On or about 8/17/06, Plaintiff was extended credit through Chris McBrearty a mortgage broker at Charter Funding, which is a subsidiary of First Magnus Financial Corporation in order to invest in what is now known to be a bogus mining investment.

40. Defendants improperly induced Plaintiff to execute documents which put her property in jeopardy and inserted her as an investor in a bogus mining operation all of which was known and intended by Chris McBrearty of Charter Funding who had a close and insider relationship with the mining investment principals.

41. Defendants Institute for Financial Learning ("IFFL") in concert with Merendon Mining and Charter Funding fraudulently and intentionally artificially inflated the value of the mining investment, including the value of Plaintiff's real properties, and Plaintiff's income in order to draw down as much cash as possible, knowing full well that proper and true underwriting standards were being ignored and fraudulently manipulated.

42. The complaint written by the US Bankruptcy Trustee in Merendon Mining's bankruptcy 09-11958-AJC is quite detailed as to the improper, illegal and fraudulent actions of Merendon Mining and their co-conspirators and is incorporated herein by reference.

43. This court, The Bankruptcy Court District of Arizona has an entire page on their website devoted to untangling the fraudulent activities by First Magnus. Plaintiff is one of the many who was hit by two fraudulent schemes; first by Merendon Mining and IFFL and second by the mortgage securitization scheme in which First Magnus was a leader/participant.

44. Defendant(s) IFFL/Merendon Mining introduced Chris McBrearty as a Mortgage Broker with Charter Funding a division of First Magnus Financial, to all attendees at their International Conference in the Bahamas in June 2006 and strongly encouraged investors from the United States to use his services.

45. Defendants improperly and wrongfully wired funds to those involved with the mining operation effectively bypassing the Plaintiff's control.

46. Defendants have all unjustly enriched themselves, benefiting financially from the Plaintiff's trust. Now they are attempting to take her residence as well. As Defendants have ignored all of Plaintiff's attempts to determine who is the holder in due course of the mortgage, Plaintiff is now lawfully seeking her day in court to determine who if anyone has standing to the note.

**FACTS RELEVANT TO THE ISSUE OF LACK OF STANDING TO FORECLOSE ON THE CHRISTENSEN'S RESIDENCE**

47. The Court is obviously aware of the crises in the mortgage industry. Charlatans have defrauded the public to the tune of Trillions of Dollars. Mortgage bankers and agencies

are lining up as if they were at a soup kitchen to be bailed out by the taxpayers. And taxpayers are losing their homes. Plaintiff has been injured by two schemes in one; the bogus mining investment in cahoots with the mortgage company which worked the mortgage backed securities racket.

48. Beginning in 1998 and through 2009, purported lenders including Defendant First Magnus, their agents, employees, and related servicers, including but not limited to Defendants Chevy Chase Bank and Capital One NA, and MERS developed a fraudulent scheme to rapidly infuse capital into the home mortgage lending system by selling mortgages on the secondary market, several times over, to create a bankruptcy remote transaction. The lenders then pooled these mortgages into large trusts, securitizing the pool and selling these securities on Wall Street as mortgage backed securities, bonds, derivatives and insurances, often for twenty or thirty times the original mortgage. Such facts are so well known and notorious as to be Judicially Noticeable under Federal Rule of Evidence 201 and Arizona Rules of Evidence 201.

49. In "selling" these mortgage notes on the secondary market, Defendant First Magnus along with other John and Jane Doe Defendants, became so reckless they failed to follow the basic legal requirements for the transfer of a negotiable instrument and an interest in real property, including but not limited to, written assignments of the note and deed of trust, delivery of the deed of trust, or endorsements of the note by the owner of the note, Plaintiff's Note and Deed of trust included. Such facts are so well known and notorious as to be Judicially Noticeable under Federal Rule of Evidence 201 and Arizona Rules of Evidence 201.

50. Further, as this process became more and more profitable, the underwriting requirements were repeatedly reduced to lure and induce more and more innocent and unsuspecting borrowers. As the lenders improperly reduced the underwriting requirements,

they introduced the concept of "churning" loans involving a calculated plan to repeatedly refinance borrowers' loans, taking as much equity as possible, and artificially driving up housing prices. In this case Defendants Chris McBrearty, Charter Funding, and First Magnus Financial placed Plaintiff into a predatory loan with toxic terms for each of the Defendants' financial gain.

51. Finally Lenders along with secondary market buyers, identified herein as Doe Defendants, would conspire with servicers, such as Defendant Chevy Chase Bank and Capital One NA, to secrete the fraudulent transfers of Plaintiff's mortgage from Plaintiff and to illegally extort monies from Plaintiff with the threat of negative credit reporting and foreclosure.

52. None of the named Defendants is a "person entitled to enforce" the security interest under the Note and the Deed of Trust, as defined in Arizona Commercial Code 47-1201. Defendant First Magnus in concert with other Doe Defendants sold Plaintiff's home loan to other financial entities, which "pooled" large numbers of mortgages, put them into trusts, and sold securities based on Plaintiff's mortgage. None of the named Defendants own the mortgage subject to this action, and none are entitled to enforce the security interest.

53. None of the attorneys representing any of the Defendants have filed a proper Notice of Appearance into this court.

54. None of the alleged servicing agents or the initial lender have filed a proof of claim into this court.

55. Defendants are now attempting to obtain putative legal title to Plaintiff's Property without having established that any of them was ever a "person entitled to enforce" the security interest under the Note and the Deed of Trust. No legal transfer of the Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property was ever effected that gave any

of the Defendants the right to be named a trustee, mortgagee, beneficiary or an authorized agent of trustee, mortgagee or beneficiary of Plaintiff's Mortgage Note, Deed of Trust or any other interest in Plaintiff's Property.

## ARGUMENT

56. Plaintiff will suffer immediate and irreparable injury if defendant is not immediately restrained from pursuing foreclosure action.

57. Plaintiff's right to Injunctive Relief is clear; an injunction is absolutely necessary to avoid additional and irreparable injury to Plaintiff, which will result should this Court deny the Plaintiff's request.

58. In Arizona, real property is considered unique and the loss of real property results in irreparable harm. See *Woliansky v. Miller, 135 Ariz. 444, 661 P.2d 1145 (Ariz. Ct. App. 1983) (noting that specific performance is available to enforce contracts for sale of real property because property is viewed as unique).* Predatory Lenders like First Magnus Financial and Servicers like Chevy Chase Bank and Capital One NA and bogus investments, not only steal the homes and life savings of unsophisticated homeowners, but they further victimize them by destroying their credit for years to come. Plaintiff whose credit score was 800+ at the time credit was extended to her, has seen it plummet to half that score.

59. Exigent circumstances exist as Defendants have already attempted to improperly, wrongfully and illegally without consideration or due process commenced foreclosure action and plaintiff believes they will do so again. Imminent and irreparable injury will occur, until such time as Plaintiff's Request for Declaratory Relief can be fully and justly adjudicated.

60. There is a substantial likelihood that plaintiff will prevail on the merits. Plaintiff is a Victim of a Predatory Lending scheme fueled by greed and fraud by the Defendants. Plaintiff has recently received the evidentiary proof in the form of a Forensic Audit of the alleged mortgage which reveals numerous discrepancies, errors and outright violations of state and federal statutes. Plaintiff has also recently received evidence as to the shocking conspiracy and fraud perpetrated by the bogus mining investment and First Magnus the alleged lender.

61. Courts across this country are now waking up to the shocking dishonesty perpetrated on homeowners and are granting homeowners their day in court to present the facts. Courts across the country are ruling in favor of homeowners as they learn of the egregious and fraudulent manner that financial institutions have operated in the last few years.

62. Plaintiff has retained two expert witnesses willing to testify to their knowledge of Plaintiff's situation.

63. Congress and Senators are now speaking up as they learn the facts of the situation as well.

64. The threatened harm to plaintiff outweighs the harm a temporary restraining order would inflict on defendant(s). Here the balance tips sharply in the favor of the Plaintiff. Plaintiff will irrevocably lose her home. There is no remedy at law to compensate Plaintiff for her loss since the property is unique.

65. Conversely, Defendants illegally granted themselves a Trustee's Deed without covenant or warranty. They put forth no consideration. It will be an unjust windfall for them should they get the Plaintiff's home. They will only be slightly inconvenienced in their scheme because they will be temporarily unable to sell Plaintiff's Residence, which is one of thousands of local homes currently for sale. In other words, the Defendants' loss, if any, is

purely time. Thus it is clear that the balance of hardships weighs heavily in favor of the Plaintiff and warrants the granting of this injunction.

66. Issuance of a temporary restraining order is in the public interest because protecting consumer rights would be served by preventing the Defendants from illegally foreclosing and gaining possession on a Note and Deed of Trust that was obtained in violation of numerous consumer protection statutes and Federal laws, and where there is no evidence that Defendants had any lawful authority or legal to foreclose or gain possession under Arizona law. See *Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1180-81(11 Cir. 1982) *(discussing public interest in enforcing TILA rights)*.

67. Plaintiff requests that this court waive the requirement of security as provided for in Ariz. R. Civ.P.65(e). It is within the court's discretion to determine whether a bond for security is necessary absent a showing by the Defendant of the likelihood of harm.

68. Other courts across the Country are dismissing foreclosure actions by the hundreds, thousands and hopefully tens of thousands as Courts catch onto the fact that in the hustle to steal from the homeowner, the mortgage companies failed to do their slightest due diligence, which is, keep accurate records of who owns a mortgage.

69. To compensate for their bad housekeeping and fraudulent activities, Mortgage companies and more specifically, the Defendants are using the law and sham paperwork to foreclose on unsophisticated homeowners through foreclosure mills—law firms that process hundreds of thousands of foreclosures with nary a care to see if what they are doing is proper or legal.

70. For example, in a recent article in The National Law Journal, Brooklyn Supreme Court Justice, the Honorable Arthur M. Schack, in connection with his approach to the

apparent sloppy paperwork being filed by foreclosing lenders and their attorneys was quoted as follows:

*"I deny more foreclosures than I approve, "[...]". "I want to see the servicing agent's power of attorney, I want to see all the paperwork before I approve it.* ***If the paperwork is garbage, I deny it.*** *If you're going to take away someone's home, it should be done properly."*

71. Judge Schack has tossed more than 32 cases so far, and that is undoubedly the tip of an iceberg.

72. Supreme Courts in New York have been dismissing suits by Aurora Loan Services for failure to prove standing and ownership of the mortgage (Order of Judge Joseph Farneti attached hereto).

73. The Bankruptcy Courts have been dismissing suits by MERS for their failure to prove standing and ownership of the note. For example in Nevada Judge Riegle stated, *"While MERS may have standing to prosecute the motion in the name of its Member as a nominee, there is no evidence that the named nominee is entitled to enforce the note or that MERS is the agent of the note's holder. Indeed, the evidence is to the contrary, the note has been sold, and the named nominee no longer has any interest in the note."* (Order of Honorable Linda B. Riegle attached hereto).

74. For other case law see Exhibit B filed on January 4, 2010.

## CONCLUSION

75. For these reasons, Plaintiff asks the Court to:

76. Issue an Emergency Order, enjoining Defendants and/or any party from any further action against Plaintiff and maintaining the Status Quo.

77. To grant Plaintiff a full and proper Evidentiary Hearing at the earliest possible time.

78. To grant Plaintiff any and all other relief consistent with the foregoing, that this Court deems just and proper.

Dated: January 14, 2010

Respectfully submitted

*Katherine Christensen*
Katherine Christensen, Pro Se
1134 West Grand Caymen Drive
Gilbert, Arizona 85233
Tel: (480) 813-3885