Katherine Christensen
1134 W. Grand Caymen Dr.
Gilbert, AZ 85233
Pro Se

FILED
2010 MAR 18 AM 11: 42
CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br>Katherine Christensen,<br>　　　　Plaintiff<br><br>V.<br><br>CAPITAL ONE NA, Chevy Chase Bank NA, et al,<br><br>　　　　Defendants, | Case #09-21818-RTB<br><br>Adversarial Proceeding #09-01357-RTB<br><br>Chapter 7<br><br>OBJECTION TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE WHY DEED OF TRUST SHOULD NOT BE DISSOLVED FOR ACTS OF DISLOYALTY; AND MOTION FOR ORDER FOR DECLARATION OF CONSTRUCTIVE TRUST<br><br>Assigned to: Hon. Judge L. Grant |

COMES NOW, Katherine Christensen "Plaintiff" who submits this **OBJECTION TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR AN ORDER TO SHOW CAUSE WHY DEED OF TRUST SHOULD NOT BE DISSOLVED FOR ACTS OF DISLOYALTY AND FOR AN ORDER DECLARING CONSTRUCTIVE TRUST.**

## I. PENDING MOTION TO DISMISS TIMELY

1. Defendant attacks Plaintiff with the statement "she has no intent to retain counsel". This prevarication fails to acknowledge Plaintiff's exhausting efforts described

*infra*. Since the hearing on February 11, 2010, Plaintiff has interviewed in person or on the phone or both, no fewer than 40 lawyers. Plaintiff has received a variety of responses. Lawyers whose expertise is in real estate law, read the court documents and say, "this case is about fraud" and won't take it. Lawyers whose expertise is fraud say, "this case is real estate law" and won't take it. Lawyers who handle both issues of real estate and fraud, want at minimum a $50,000.00 retainer so I can't take them. Lawyers who are less experienced say their, "lack of experience would prevent them from doing a good job" and won't take it. Lawyers who understand both issues and are willing to work for less than a $50,000.00 retainer up front, are already on overload and cannot possibly take on another case and won't take it.

2. In spite of this time consuming task, and continuing disappointment, Plaintiff has relentlessly persevered and found one lawyer who is willing to consult with her, but at this time is unable to take on the whole case. Plaintiff is not sleeping on her rights and is aware she is up against deadlines to timely file into this case. Plaintiff must pause in her efforts to find a lawyer, and do the best she can with available resources to timely deal with the paperwork.

## II. DEFENDANT'S COMPLAINT ABOUT ERRONEOUS APPLICATION OF TRUST LAW IS OFF POINT

3. Defendant has hit the core issue on the head. We don't know what kind of trust is at issue, only that Plaintiff was supposed to have created it "irrevocably" which seised herself of her property. We do not know what kind of trust was created or what the "terms of the trust" were. Plaintiff demands to know whether or not the actions taken by the Defendants were authorized by the trust terms. Defendant puts forth another canard when it said, "the Deed of trust at issue is not a testamentary trust, but instead is a security instrument given by Plaintiff Christensen to secure repayment on a note for certain funds loaned to her." (Response, pg. 2, lines 12-15) That is the other inseparable core issue. The putative Lender loaned

NOTHING TO HER in the form of money of exchange, but merely returned to her the money she created when the Lender securitized her Promissory Note. (See Modern Money Mechanics; A Workbook on Bank Reserves and Deposit Expansion, published by The Federal Reserve Bank of Chicago from 1961 – 1992), *infra*. Therefore, Plaintiff denies that she created such a one-way, cognovit DEED OF TRUST knowingly, intentionally, and voluntarily. The putative Lender still lent nothing and yet, under Defendant's theory, still claims to be legally entitled to receive payments on an obligation to which it is not a true party. Defendant wants to be paid for something it did not do or perform; loan Plaintiff money of exchange to qualify as a true lender. This three card Monte "sleight of hand" has the same end result as a cat performing the "Litter Box Effect." This burying and hiding of the cognovit elements was all done using established trust principles and terminology which, historically, are intended to maximize privacy by the parties. But for the Defendant's Acts of Disloyalty in assisting with the maximization of the "Litter-Box Effect," it participated in this civil conspiracy by not disclosing the cognovit elements of the transaction which rendered the escrow process incomplete. Whether the court invokes trust law or financial instruments law, fraud is still fraud no matter what flag it flies under. When disclosure by a fiduciary is mandatory and deliberately and intentionally not performed by Defendants who were under a legal obligation to do so, it is fraud.

4. Defendant states that a claim against the title company, "...would invalidate Defendant's claim and rights where it lent money in good faith..." Plaintiff was not aware that Defendant is the Creditor until reading this statement of this claim. Prior to this action, Plaintiff has only received documents from Defendant stating that it is a "servicing agent", and as such has never put forth any consideration for the property. Plaintiff now demands clarification. Is the Defendant the Creditor or the servicing agent? As previously determined

by the Supreme Court of Kansas in a similar action, *infra*, until Defendant can show they are the real party in interest, Defendant has no standing to foreclose.

### III. REMEDY SOUGHT IS APPROPRIATE IN THE CIRCUMSTANCE

5. Defendant stated that Plaintiff's facts are "subterfuge to try to convince the Court to deny Defendant its right to lift the stay and foreclose on the property" Defendant's argument is disingenuous. Plaintiff needs the time to sift through the "Litter-Box" trust in the form of a forensic audit. That is why Defendants do not want the forensic audit to be entered into evidence. Based on the developing evidence completed so far, Defendants are making an attempt to fraudulently and wrongfully foreclose on Plaintiff's property. The forensic audit has identified numerous issues of fraud and wrongdoing in the mortgage documents and mortgage process that Defendants are making a mighty effort to keep buried in the Litter-Box.

6. Defendant stated "There is nothing to trace", as if saying, "There's nothing to hide." If that is so, then Plaintiff looks forward to Defendants answering the long delayed legal Qualified Written Request. Twice Plaintiff has asked Defendants to provide information in the form of a Qualified Written Request. Defendants have never responded so Plaintiff commenced her own forensic audit. Plaintiff is making every effort to produce high quality evidence for the Court, along with the expert witnesses who will testify to its veracity.

7. Another baseless claim was "[p]laintiff has offered no reason why she could not have already completed her discovery." Plaintiff was waiting for the Order of the Court before commencing with the Discovery request as compulsion appears to be the only way Defendant's will cooperate in the production of testimony and documents. With permission from the Court Plaintiff will move quickly to commence discovery.

8. Defendant states that Plaintiff is aware of the "benefit" and the "bargain" she received by signing the documents. Plaintiff objects and restates the above arguments, and incorporates by reference the arguments in all documents filed into this case.

9. It appears that Defendant is unfamiliar with Plaintiff's case because contrary to their assertions, Plaintiff's property was free and clear of all encumbrances when it was seised under false pretenses by actors not legally entitled to do so. But for the egregious, naked and notorious Acts of Disloyalty by Defendants, Plaintiff at the signing table, Plaintiff never would have entered this transaction.

10. Defendant stated that Plaintiff is in bankruptcy and "cannot afford to make further payments" Plaintiff has a legal right to know inter alia, who the lawful Creditor is, and what the payments are. Plaintiff incorporates by reference to Plaintiff's Motion For An Order To Enforce Qualified Written Requests Pursuant to 12 U.S.C. Sections 2605 and 2609 which was filed into this case on February 1, 2010 at 1:33pm.

## STATEMENT OF FACTS

In support hereof, Plaintiff incorporates by reference her filing of February 26, 2010 and supplements with the following:

11. The Agent-Trustee for the uttered DEED OF TRUST is North American Title Insurance Company is, in equity, the traditional Real-Party-In-Interest for this questioned transaction which, by its terms, created an irrevocable trust and conveyed the subject property into a undisclosed trust which violated the terms of the trust instrument. At the very least, it is an Agent-Trustee.

12. 2. For specificity, North American Title Insurance Company ("NATL") has participated in this civil conspiracy by committing a breach of trust with Acts of Disloyalty against the Settlor/Trustor/Plaintiff in violation of, inter alia, ARS §§ 14-10802, 14-10406, 14-10402, 14-7510.

# THE DEED OF TRUST FAILS AS IT WAS A SHAM TRANSACTION BY OPERATION OF LAW BASED ON DISLOYALTY OF THE TRUSTEE CAUSING A <u>CONSTRUCTIVE TRUST TO ARISE AT CLOSING</u>

13. The DEED OF TRUST at issue identified the following parties and their role in the sophisticated drama of movement and monetization of negotiable instruments:

   a. "Trustee" is North American Title Agency of Arizona, inc;

   b. "Borrower" is the [T]rustor under the Security Instrument;

   c. "Lender" is First Magnus Financial Corporation, an Arizona Corporation;

   d. "MERS" is Mortgage Electronic Registration Systems, Inc., a separate corporation that is acting as a nominee for Lender and Lender's successors and assigns;

   e. "MERS" is the beneficiary under this Security Instrument;

   f. "Security Instrument" means this document which is dated August 17, 2006;

   g. "Note" means the promissory note signed by Borrower [Settlor, Trustor];

   h. "Loan" means the debt evidenced by the Note...;

   i. "Note Holder" is the Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note.

14. Plaintiff/Trustor/Settlor owned the subject property free and clear of all encumbrances in fee simple

15. The paragraph of Rights In The Property states, in relevant part:

"The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender:.... Borrower[Settlor, Trustor] **irrevocably** grants and convey to Trustee, **in trust,** with power of sale, the following described property...." DEED OF TRUST ("DOT"), p.3 ¶ 2. (alteration added)

"TOGETHER WITH all improvements.... All of the foregoing is referred to in this Security Instrument as the 'Property.' Borrower [Settlor, Trustor] understands and agrees that MERS holds only legal title to the interest granted by Borrower [Settlor, Trustor] in this Security Instrument, ...MERS (as nominee for Lender and Lender's successors and assigns) **has the right:....**" Id. ¶ 3. (alteration added) (emphasis added)

BORROWER [SETTLOR, TRUSTOR] COVENANTS that Borrower is lawfully **seised** of the estate hereby conveyed..." Id. ¶ 4. (alteration added)

16. DEED OF TRUST is defined in part as:

"A conveyance creating a trust in real estate; a conveyance given as security for the performance of an obligation which is generally regarded as containing the elements of a valid mortgage. ... The difference between a deed of trust and a mortgage is essentially one of form, the formed **being executed in favor of a disinterested third person as trustee,....**" BALLENTINE'S LAW DICTIONARY, 3rd ed. at 319. (emphasis added)

17. Black's Law Dictionary, 5th ed, defines "Escrow," in relevant part as:

A writing, deed, ...or other property delivered by the grantor, promisor, [Trustor] or obligor into the hands of a third person, to be held by the latter until the happening of a contingency or performance of a condition, and then by him delivered to the grantee, promise [Lender] or oblige. A system of document transfer in which a deed ... is delivered to a third person to hold until all conditions in a contract are fulfilled; e.g delivery of deed to escrow agent under ... contract until full payment for land is made." Id. at 489. (alteration added)

18. Traditionally, in equity, the Trustee is the traditional Real-Party-in-Interest. However, the Arizona Supreme Court has held an escrow agent has a fiduciary obligation to disclose:

> On the other hand, the escrow agent should not assist the perpetration of fraud by silence when disclosure could prevent the accomplishment of the fraud. Generally, there is no duty to disclose information received by an escrow agent unless such a duty is required by the terms of the agreement, but we hold that there is an exception to the foregoing rule when the escrow agent *knows* that a fraud is being committed on a party to an escrow and the failure of the escrow agent to disclose the information of the fraud will assist in accomplishing the fraud; under such conditions the escrow agent has a duty to disclose the facts actually known. *Berry v. McLeod, No. 14161 (1979)*

19. Defendant is a fiduciary under Arizona law:

In its fiduciary capacity the escrow agent must conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence. *Tucson Title Insurance Co. v. D'Ascoli, supra; Buffington v. Title Insurance Co. of Minnesota*, 26 **Ariz**. App. 97, 546 366 (1976). Id.

This fiduciary relationship as the Agent-Trustee is more fully set forth *infra*.

20. NATL breached its Duty of Loyalty as defined in ARS § 14-10902(B)(1), which states in relevant part: "The transaction was authorized by the terms of the trust." Defendant NATL failed in its obligation to verify and disclose the terms of the trust as this DEED OF TRUST, by its own terms, states the Borrower, Settlor, Trustor conveyed, **irrevocably** into the trust yet grants MERS, as nominee and Beneficiary, the powers of a Trustee. The terms of the trust cannot permit activity particular to trusts and the cognovit Deed of Trust without disclosure as the undisclosed trust IS PART OF THE ESCROW INSTRUCTIONS (emphasis added).

21. The next act of Disloyalty, occurred in violation of ARS § 14-10402(A)(2), which states in relevant part: "…a trust is created only if all the following are true: 2. The settlor indicates and intention to create the trust." Defendant NATL took no action to look into the terms of the trust. In its fiduciary capacity the escrow agent must conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence. *Tucson Title Insurance Co. v. D'Ascoli,* 94 Ariz. 230 (1963).

22. Defendants generally uttered this cognovit adhesion DEED OF TRUST as creating a trust. In doing so, it became part of the escrow instructions and Defendants were under a duty to disclose its terms, especially since we do not know what kind of trust is at issue. Defendant NATL's breach of its Duty of Loyalty by not disclosing the "terms of the trust" to validate and disclose what actions were authorized and which were not, triggered ARS § 14-7510, which states in relevant part: "In any case not provided for in this article the rules of law and equity, including the law merchant and those rules of law and equity relating to trusts, agency, negotiable instruments and banking, shall continue to apply."

## A. SHAM TRANSACTION ANALYSIS

23. While the sham transaction analysis is peculiar to the government's attack on private trusts for tax purposes, it is instructive in this circumstance as there is a significant spread between the form of the DEED OF TRUST, the unidentified trust purportedly created, and well-settled trust and agency law governing the Trustee's conduct sub judice. However, "Before determining whether a particular activity arises in or is connected with a trade or business, it must first be established that the transaction in question is bona fide and not a sham.... What is of moment and appropriate is to "look beyond the form of an action to discover its substance." *Zmuda v. CIR,* 731 F. 2d 1417 (1984).

24. As Defendants have not presented the Trust Indenture for examination to determine the "terms of the trust" for this transaction, we are unable to ascertain whether or not Defendant NATL or MERS were authorized to take the prima facia actions purportedly authorized by this cognovit DEED OF TRUST. Plaintiff argues the undisclosed trust became part of the escrow instructions and Defendant was under a duty to disclose its terms.

25. What makes this purported irrevocable trust so unusual is MERS, the servicing agent, a non-party to the transaction, appointed itself to the rank of beneficiary, usurped the traditional power and authority of the Trustor, Settlor, and improperly appointed the trustee. While this case may be one of first impression in Arizona, other jurisdictions have addressed similar situations. As their rulings are not binding on this court, they serve as guideposts in arriving at the ends of justice. The issue of what exactly MERS is was examined by the Supreme Court of Kansas in *Landmark National Bank v. Kesler,* when it held:

> The mortgage says that MERS acts "solely as nominee for Lender." There is no express grant of any right to MERS to transfer or sell the mortgage or even to assign its duties as nominee. Nor does MERS obtain any right to the borrower's payments or even a role in receiving payments. Id. at 3-4.

URL: *http://www.kscourts.org/Cases-and-Opinions/opinions/ctapp/2008/20080912/98489.htm.*

OBJ TO S&C RESP TO MOTION TO SHOW CAUSE & CONSTRUCTIVE TRUST-BK   Page 9 of 17
Case 2:09-ap-01357-RTB   Doc 50   Filed 03/18/10   Entered 03/19/10 16:37:15   Desc
Main Document   Page 9 of 17

26. Without proper authorization by the terms of the trust, MERS improperly influenced the escrow transaction and made Plaintiff an **INVOLUNTARY SETTLOR, TRUSTOR** to what appears to be multiple insider transactions to improperly seise her property rights in trust by "deceit, craft and trickery."

27. The only method to ascertain whether or not MERS was lawfully authorized to conduct itself in such a way is to examine the documents that created the trust itself to determine its terms. "By the 'terms of the trust' is meant the manifestation of intention of the settlor with respect to the trust expressed in a manner which admits of its proof in judicial proceedings. The intention of the settlor which determines the terms of the trust is [her] intention at the time of the creation of the trust and not [her] subsequent intention.

28. The duties or powers of the trustee cannot be enlarged or diminished by a direction of the settlor given subsequent to the creation of the trust, except to the extent to which the settlor has reserved power to revoke or modify the trust to control its administration. If the manifestation of intention of the settlor is admissible in evidence, it is a term of the trust whether expressed by written or spoken words or by conduct." RESTATEMENT, TRUSTS, 2nd § 164, Duties and Powers of the Trustee, Comments a, b and c, at pp. 341-42. In other words, was an actual "trust" in existence?

29. Before undertaking the sham trust analysis, one must determine that there is a legal trust in existence. A trust must have each of the following elements: (1). A manifestation of intention of the Settlor, Trustor to create a trust; (2) Trust property; (3) A lawful trust purpose; and (4) At least one identifiable beneficiary. If a trust lacks any one of these elements, it is not a legal trust. If it is established that there is not a legal trust, then there is no argument that a trust exists in the first place and the DEED OF TRUST fails. In other words, unless there is a legal trust to begin with, there is no need to engage in the sham trust analysis

because the analysis presupposes that a legitimate trust is in existence. In essence, the sham trust analysis asks the following question "If there is a legal trust in existence, is that trust a sham [for concealing the true "Lender", the identity of the true Note Holder, and the proper disclosure of the escrow instructions contained in that hidden trust?]"

30. The issue of whether the purported Lender, First Magnus Financial Corporation "loaned" any money has been argued previously and will not be addressed here even though it is a critical element to establishing the fiduciary relationship, the lawful purpose of the trust, and whether the escrow transaction was properly completed payment by the Lender.

## B. CONTROLLING AGENCY-TRUST LAW

31. As authorized in ARS § 14-7510, supra, well settled, black letter trust law will cause the DEED OF TRUST at bar to fail as no trust ever existed and draws the bright line for the Acts of Disloyalty by the Trustee, NATL. Specifically:

a. The definition of trust. "A trust... is a fiduciary relationship with respect to property, subjecting the person by who the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." RESTATEMENT OF THE LAW, 2nd, TRUSTS § 2.

b. § 3, states:
(1) The person who creates a trust is the settlor.
(2) The property held in trust is the trust property.
(3) The person holding property in trust is the trustee.
(4) The person for whose benefit property is held in trust is the beneficiary. Id.

c. § 4 states:
The phrase "terms of the trust" means the manifestation of intention of the **SETTLOR** with respect to the trust expressed in a manner which admits of its proof in judicial proceedings. Id. (emphasis added)

"Thus, before payment of the debt a mortgagee may properly transfer to a third person [her] interest in the debt and in the security; **it is a breach of trust for a trustee to transfer the trust property to a third person, unless he is authorized to do so by the terms of the trust....**" Id, § 9 at 27.

BLACK'S LAW DICTIONARY, 5TH ed. defines "Malfeasance", in relevant part, as follows:

32. Malfeasance is a wrongful act which the actor had no legal right to do ... or an act for which there is no authority or warrant of law or which a person ought not to do at all, or the unjust performance of some act which party performing it has no right.... Id at 862.

33. Even if NATL is not held to the rank of a traditional Trustee, Arizona courts have held it had a fiduciary obligation to disclose as an Agent-Trustee. Agency and Trust are distinguished as follows:

> One who has title to property which he agrees to hold for the benefit and subject to the control of another is an agent-trustee and is subject to the rules of agency. RESTATEMENT OF THE LAW, 2nd, Agency § 14B at 62.

Further:

> "If he holds such title and also holds the property subject to the control of another, he is an agent-trustee." Id at § 14B(b) referring to Restatement of Trusts, § 8.

RESTATEMENT OF TRUSTS, 2nd § 8 states:

"An agency is not a trust."

§ 8(h) states:

> "Where the agent has title. The mere fact that an agent is entrusted not merely with possession but also with the title to property for his principal does not make applicable the rules which are applicable to trusts, but the rules applicable to agency are applicable. Id. at 25.

§ 9 states:

"A mortgage or a pledge or a lien is not a trust." Id. at 26.

§ 9 (c) states, in relevant part:

> "[I]t is a breach of trust for a trustee to transfer the trust property to a third person, unless he is authorized to do so by the terms of the trust...." Id. at 27.

34. To achieve the ends of justice, the court must look past the form of the DEED OF TRUST and into the substance of the transaction and compel production of the Trust Indenture documents that authorized the Trustee NATL and the nominee Trustee, MERS, and Beneficiary, MERS, to do the acts done so far that caused this action.

35. In Lancaster Security Investment Corp. v. Kessler, 159 Cal.App.2d 649, 324 P.2d 634, 638-639 (1958), the court stated: "An ordinary trust deed is little more than a mortgage with power to convey. Bank of Italy etc. Ass'n v. Bentley, 217 Cal. 644, 654, 20 P.2d 940. "A trustee under a deed of trust does not assume the important obligations which are in some instances cast upon a trustee by operation of law." Ainsa v. Mercantile Trust Co., 174 Cal. 504, 510, 163 P. 898, 900, and cases cited. The trustee of a trust deed is not a trustee in the strict sense of the word." However, "[i]n its fiduciary capacity the escrow agent must conduct the affairs with which he is entrusted with scrupulous honesty, skill, and diligence." *Tucson Title Insurance Co. v. D'Ascoli, supra.*

36. NATL breached its fiduciary duty by failure to disclose the terms of the trust, to verify the trust, in fact, existed and authorized the actions taken by itself, MERS, and the putative Lender beneficiary.

37. As previously argued by Plaintiff, no money was ever "loaned," by the purported Lender after the First Magnus monetized the Promissory Note. NATL failed to disclose this monetization process to the Trustor and the secret profits made of the sale and resale of her monetized Promissory Note. In fact, according to the current rules of the Federal Reserve, when the Promissory Note was monetized, the Trustor, Borrower enjoyed the same process of metamorphosis and became the Creditor by creating her own money. In fact, Plaintiff received back her own newly created money. The Federal Reserve Bank of Chicago, in its publication, MODERN MONEY MECHANICS, A Workbook on Deposits, Currency and Bank Reserves, published in October 1982, stated, in relevant part:

> "Who creates money? ...The actual process of money creation takes place in the banks. ... [C]heckable liabilities of banks are money. These liabilities are customers' accounts.... [B]ankers discovered that they could make loans merely by giving borrowers their promises to pay (bank notes). In this way, banks began to create money.... Transactions deposits are the modern counterpart of bank notes. It was a small step from printing notes to making book entries to the credit of borrowers which

the borrowers, in turn, could 'spend' by writing check, thereby 'printing' their own money." Id at 3-4. (alteration added) Id.

38. As the putative "Lender," First Magnus Financial Corporation failed to produce any documents verifying it lent anything to Trustor, NATL knew, or should have known, the escrow process was incomplete for failure to "lend" any money of exchange, thus rendering the DEED OF TRUST seising her property rights fraudulent. The agent-Trustee, NATL, failed in every definition of fair dealing and loyalty by concealing the true elements of the cognovit Deed of Trust to the Settlor/Trustor/Plaintiff. "A trust is created only if the settlor [borrower, Trustor] properly manifests an intention to create a trust." RESTATEMENT OF LAW, Trusts, § 23 at 66. By manifestation of intention is meant the external expression of intention as distinguished from undisclosed intention.

39. If full disclosure would have occurred, which it did not on the elements of the cognovit DEED OF TRUST, the Settlor, Trustor, Borrower, would not have entered into this transaction. But for the breach of trust and disloyal acts of the escrow trustee, she would have walked away. As ARS § 14-10406 makes clear, this DEED OF TRUST with characteristics purporting to be both an irrevocable and revocable trust, "is void, in whole...to the extent its creation was induced by fraud, duress or undue influence." If disclosure of the cognovit clause occurred, which it didn't and the dominant position of MERS in the transaction, which controlled the Trustee to the detriment of the Settlor, Trustor, Borrower, was disclosed, Plaintiff would not have entered into the transaction. "Equity will not permit the loyalty rule to be circumvented by any subterfuge.

40. Indirect disloyalty is just as objectionable as direct. Hence the [agent-] trustee cannot avoid the operation of the doctrine by dealing with a person who is in collusion with him (a straw man);.... Corporate fiduciaries may violate the rule if they deal with affiliated or subsidiary corporations where there is a high degree of common interest and control [e.g.

North American Title Insurance Company]. Agents and employees of the trustee, and officers of a corporate fiduciary, are also affected by the loyalty rule." TRUSTS, 6th ed. § 95, Duties of Trustee at 344. (alteration added)

41. While it is true, the Trustee owes its first Duty of Loyalty to the Beneficiary, "the loyalty doctrine applies to all persons in a fiduciary or confidential relation, TRUSTS, 6th ed., George T. Bogert, Hornbook Series, ch. 95, Trustee's Duty of Loyalty, pp. 334-35. As the courts have expanded the fiduciary responsibility of agent-trustees (see Tucson Title Insurance Co v. D'Ascali, supra), the Settlor/Trustor definitely had a fiduciary and confidential relationship with the escrow agent-trustee.

42. Plaintiff relied on the expected fair dealing and disclosures particular to real estate transactions in Arizona. She trusted the agent-Trustee to perform, at a minimum, in compliance with the law.

**C. DEED OF TRUST CONVERTED TO CONSTRUCTIVE TRUST AT CLOSING**

43. "A Constructive trust is a relationship with respect to property subjecting the person by who title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." RESTATEMENT, TRUSTS, 2nd §1 at 5. It is well settled in Arizona law that all transactions involving real estate must be in writing. "[] express trusts ... are based upon a manifestation of intention of the person who creates them. An express trust is created ONLY if the settlor manifests an intention to create it.... On the other hand, a constructive trust is imposed, not to effectuate intention, but to redress wrong or unjust enrichment. A constructive trust is remedial in character." Id. § 1, at 5. (alteration added) (emphasis added)

44. Constructive fraud arises only when there exists a special confidential or fiduciary relationship between the parties to a transaction or contract..... *Faulkenberry v. Kansas City Southern Ry. Co.*, 602 P.2d 203 (Okl. 1979); *Blodgett v. Martsch*, 590 P.2d 298 (Utah 1978); *Snell v. Cornehl*, 81 N.M. 248, 466 P.2d 94 (1970); *Loucks v. McCormick*, 198 Kan. 351, 424 P.2d 555 (1967); 37 Am.Jur.2d *Fraud and Deceit* §§ 4, 15, 442 (1968 & Supp. 1981); 37 C.J.S. *Fraud* § 2 (1943 & Supp. 1982). The presumption of fraud has been found in cases involving dealings and transactions of trust, such as agency, attorney and client, ...trustee and *cestui que* trust....(alteration added) *See* 37 Am.Jur.2d *Fraud and Deceit* § 442 at p. 604 (1968 & Supp. 1981). This confidential or fiduciary relationship existed between Trustor and NATL. Violation of this fiduciary relationship caused the Constructive Trust to arise.

## CONCLUSION

45. There is no doubt that Plaintiff, in her capacity as Settlor/Trustor was improperly induced to enter into this adhesion cognovit DEED OF TRUST which purported to seise her of her property rights through "deceit, craft and trickery" by breach of trust and the disloyal acts of NATL in its capacity as an Agent-Trustee by its failure to disclose the true nature of the contracts, including the terms of the trust. Defendants as a whole, have convoluted, distorted, and improperly applied settled agency and trust law to the detriment of the Settlor/Trustor which resulted in unjust enrichment of the purported Lender who loaned nothing to the Trustor.

46. According to the Federal Reserve Bank of Chicago's own publication, the Trustor, Borrower became the Creditor when she created "her own money." It is clear, save for the innocent Trustor, all other parties to this transaction may have crossed the bright line of duty, loyalty and compliance into criminal conduct. These improper acts have clearly provided evidence for the court to declare all Defendants to be Constructive Trustees permitting

Trustor/Creditor to trace the product profits realized from the monetization of her Promissory Note which was improperly sold and resold.

47. Upon declaration by the Court that a Constructive Trust now exists, the Court must, in the interests of justice, compel Defendants to produce all records to permit Plaintiff to trace the product of the money she created when the purported "Lender" monetized her Promissory Note and MERS improperly repackaged and sold her property rights. None of which was authorized by the terms of the trust.

**WHEREFORE** Plaintiff respectfully moves the Court to:

48. Enter an Order to Show Cause why a Constructive Trust should not be declared;

49. Enter an Order declaring all Defendants are Constructive Trustees;

50. Enter an Order to commence expedited Discovery to permit tracing of the Promissory Note monetization product;

51. Enter an Order dissolving the Deed of Trust pursuant to ARS § 14-10406 for fraud, duress and undue influence by MERS;

52. Enter an Order dismissing the foreclosure action and Order the property sub judice to be reconveyed to Settlor/Trustor free and clear of all encumbrances in fee simple.

53. In the alternative, enter an Order preventing the named parties from taking any further action against Plaintiff/Settlor/Trustor or her property pending the outcome of discovery and tracing.

54. Any other relief the court determines equity demands.

Dated : March 18, 2010.                                Respectfully submitted,

                                                                         Katherine Christensen Pro Se
                                                                         1134 W. Grand Caymen Dr.
                                                                         Gilbert, AZ 85233
                                                                         480-813-3885